UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x

HELEN NELSON,

        Plaintiff,                    <u>MEMORANDUM</u>
                                           <u>AND ORDER</u>

    -against-                     03-cv-6247(DGT)

UNUM LIFE INSURANCE CO. OF
AMERICA and JOSTENS, INC.,

        Defendants.
--------------------------------x

TRAGER, J.:

    Plaintiff Helen Nelson alleges that defendants Unum Life
Insurance Co. of America ("Unum") and Jostens, Inc.
("Jostens")(collectively, "defendants") improperly denied her
long-term disability benefits in violation of the Employee
Retirement Income Security Act of 1974 ("ERISA"). <u>See</u> 29 U.S.C.
§ 1001, <u>et seq.</u> Plaintiff seeks to recover benefits for neck and
back pain stemming from a 1980 motor vehicle accident. Defendant
Unum denied plaintiff's request for benefits, and affirmed the
denial of benefits upon appeal and reappeal, citing the opinion
of its consulting orthopedic surgeon, who based his opinion on a
review of plaintiff's medical records. Plaintiff filed suit on
January 3, 2003, and both parties now move for summary judgment.


## Background

    Plaintiff is a 57-year-old customer service representative
who last worked on May 20, 2002. Plaintiff had periodically

experienced severe neck, lower back pain and headaches as a result of the 1980 motor vehicle accident, and these symptoms intensified in the time leading up to her last day of work.

From approximately 1993 until 2002, plaintiff worked for Jostens (and its predecessor), which photographs the students for a large percentage of schools in the New York City area. Jostens has contracted with Unum to provide its employees with disability insurance pursuant to an employee welfare benefit plan, which is governed by ERISA.

The Unum long-term disability policy ("the plan") defines disability as follows:

> You are disabled when Unum determines that:
> -you are limited from performing the **material and substantial duties** of your **regular occupation** due to your **sickness or injury**; and
> -you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

Statement of Material Uncontested Facts in Supp. of Def. Unum Life Ins. Co. of Am.'s Cross-Mot. for J. on the Admin. R. ("Def.'s 56.1 Stmt."), Ex. 2 at UACL00603 (emphasis in original).[1] The plan defines "regular occupation" as "[t]he

---

[1] It bears mentioning that Ex. 2 of Def.'s 56.1 Stmt. is the administrative record, which defendants have submitted, in their words, "for the Court's convenience." Quite the contrary. Defendants have submitted the 642-page administrative record, not

occupation you are routinely performing when your disability

begins.  Unum will look at your occupation as it is normally

performed in the national economy, instead of how the work tasks

are performed for a specific employer or at a specific location."

Id. at UACL00587.  The plan further provides that, "[w]hen

making a benefit determination under the policy, Unum has

discretionary authority to determine your eligibility for

benefits and to interpret the terms and provisions of the

policy."  Id. at UACL00607.

At the time she stopped working, plaintiff was under the

care of a neurologist, Dr. Shan Nagendra, and a chiropractor,

Richard McAlister.  Based on an examination and MRI, Dr. Nagendra

diagnosed plaintiff with lumbar disc herniation with spinal canal

stenosis and mild spondylosis related to her 1980 motor vehicle

---

in chronological order or in any other sensible sequence, but
rather in reverse Bates-number order.  This apparently random
arrangement of the underlying documents has cost the court
considerable time and aggravation.  A review of other cases
reveals that this is not the only time defendant Unum has
haphazardly submitted an administrative record.  See, e.g.,
Allison v. Unum Life Ins. Co., No. 04-CV-0025, 2005 WL 1457636,
at *1 (E.D.N.Y. Feb. 11, 2005) (Wall, M.J.)("The court notes, as
a threshold issue, that some of the following factual information
was pieced together with great difficulty from the three volume
Administrative Record ("AR") filed by the defendants under seal.
It consists of 788 pages arranged in apparently random order. The
last page of Volume 3, which is dated 11/10/99, is stamped 00001,
and the first page of Volume 1, which is dated July 16, 2002, is
stamped 00788. The pages in between, which contain documents
dated as late as July 2003, follow no fixed chronological
pattern, and the record is extremely difficult to use.").  A
repeat of this conduct would warrant the imposition of sanctions.

accident.  Plaintiff applied for short-term disability benefits,
which Unum approved, subject to periodic updates on plaintiff's
condition.  Unum ultimately paid plaintiff short-term disability
benefits until November 24, 2002, after which her claim was
converted to one for long-term disability benefits.

Plaintiff, her physicians and chiropractor, and Jostens
submitted documentation to Unum detailing plaintiff's diagnoses,
treatments, progress (or lack thereof), restrictions and
limitations, and the physical requirements of plaintiff's job as
a customer service representative at Jostens.  The administrative
record also contains numerous notes from various Unum reviewers
indicating whether they believed the restrictions and limitations
claimed by plaintiff and her doctors were supported and what, if
any, further information was required to evaluate the claim.

In particular, Dr. Nagendra filled out physical capacities
evaluation ("PCE") forms provided by Unum each month from June-
October 2002, in which he consistently indicated that plaintiff
was capable of sitting for up to two hours, standing for up to
two hours, and walking for between one and three hours.  What is
unclear, however, is whether plaintiff could perform these
activities for the stated durations continuously or
intermittently, as Dr. Nagendra failed to so state for the months
June-August 2002.  In the September 2002 PCE, Dr. Nagendra stated
that plaintiff could sit and stand for up to two hours per day

"alternating." Then in the October 2002 PCE, he indicated that plaintiff could sit, stand and walk for up to two hours per day "continuously."

In the PCEs from June-September 2002, Dr. Nagendra indicated that plaintiff could push up to ten or fifteen pounds (her pushing capability varied, depending on the date of examination), and pull and lift up to ten pounds. In the October 2002 PCE, however, Dr. Nagendra stated that plaintiff was incapable of pushing, pulling or lifting any weight whatsoever. Dr. McAlister also opined that plaintiff could not drive, due to her inability to turn her head, and could not travel by bus for longer than one-and-a-half to two hours each day, due to excessive jostling. In the October 2002 PCE, Dr. Nagendra concurred that plaintiff was unable to travel by bus.

According to a Job Analysis form completed by Troy Rudoll, Eastern Regional Sales Manager for Jostens, plaintiff's job as a customer service representative required her to perform "clerical work; answering telephones, paperwork, filing, preparing film to ship to our processing facilities." <u>See</u> Def.'s 56.1 Stmt., Ex. 2 at UACL00290. Mr. Rudoll further indicated on the form, "Majority of time is spent sitting. Minor walking around office to get files." <u>Id.</u> Mr. Rudoll wrote that plaintiff's job required her to carry film and photoproofs, weighing three to five pounds and occasionally up to ten pounds, a distance of

fifty feet three to five times per day.  Id.  He further noted
that the equipment used in the job consisted of "telephone,
pens/pencils, paper," and the job "requires a lot of sitting and
working at a desk, answering phones, completing paperwork, etc."
Id.

Plaintiff's medical evidence was reviewed on behalf of Unum
by Ruth Box, R.N., on June 10, 2002; by Lisa Lewis, R.N., on
September 10, 2002, October 17, 2002, October 29, 2002, and
November 22, 2002; and by Dr. Geron Brown, M.D., on November 25,
2002.  On January 14, 2003, Unum denied plaintiff's claim for
long-term disability benefits, giving the following explanation:

> The job analysis provided by your employer indicates
> that your job is sedentary with lifting of up to 10
> pounds.  The majority of the time is spend sitting
> while working, with minor walking to obtain files.
>                    . . . .
> The medical review indicates that based on the MRI of
> your lumbar spine, you have mild spondylosis and
> degenerative disc bulfing at L4-5 and mild central
> spinal stenosis at L4-5 and L3-4.  The MRI of your
> cervical spine suggests annular disc bulge at the C4-
> 5 and C5-6.  The medical review concluded that based
> on the medical information in our file, while there
> is support for some restrictions and limitations you
> are able to perform your sedentary job on a full time
> basis.

Id. at UACL00306-07.

Plaintiff appealed the determination on July 7, 2003,
disputing, inter alia, Mr. Rudoll's description of plaintiff's
job duties and forwarding a "random sampling" of shipping records
which she alleged showed that she was frequently required to lift

packages heavier than 10 pounds.  Id. at UACL00460.  Plaintiff
further included a chart compiling the data from the shipping
records to indicate the dates on which packages of various
weights were shipped.  Id. at UACL00455.  The chart, which does
not purport to be exhaustive, indicates that over a seven-month
period, Jostens shipped 51 packages weighing 10 pounds or less,
28 packages weighing 11-15 pounds, 5 packages weighing 16-20
pounds, 9 packages weighing 21-30 pounds and 7 packages weighing
30-47 pounds.  There is no indication of how many people worked
at Jostens who were available to carry these packages.

Unum acknowledged receipt of plaintiff's appeal on July 17,
2003, and on August 6, 2003, it advised plaintiff's counsel that
it was affirming the denial of benefits after a further review of
her record by Dr. George Seiters, M.D., on July 29, 2003.  Id. at
UACL00476.  The letter denying plaintiff's appeal was signed by
Shane Berryhill, Sr. Appeals Specialist, and included the
following:

> The policy under which your client is insured, in
> part, states:
>
> "Regular Occupation means the occupation your are
> routinely performing when your disability begins.
> Unum will look at your occupation as it is normally
> performed in the national economy, instead of how the
> work tasks are performed for a specific employer or
> at a specific location."
>
>                    .  .  .  .
>
> We received your letter of appeal, along with the
> additional information you submitted, within our

office on July 11, 2003.  We have had the clinical
portion of this information reviewed, in conjunction
with the file's previously existing clinical
information, by a Board Certified Orthopedic Surgeon.
                    . . . .

<u>As you can see, the Board Certified Orthopedic
Surgeon [Dr. Seiters] concluded, in part, "In my
opinion, the clinical findings are consistent with
restricting push, pull, lift and carry to the 5 to 10
lb. range</u> . . . . The information available from the
treating chiropractor in June 2003 is consistent with
continued R&Ls related to the cervical spine for
repetitive, prolonged or extreme cervical spine
positioning, activity in the DOT sedentary range and
a requirement for frequent change of position."

It appears the national economy would consider your
client's regular occupation to be sedentary in
nature.  Furthermore, there is no indication that she
would be unable to frequently change position.

<u>Id.</u> at UACL00474-76 (emphasis added).

    Thus, despite the shipping records plaintiff had forwarded

on appeal, Unum continued to characterize her occupation as

sedentary.  Unum also advised plaintiff's counsel that plaintiff

had failed to submit medical evidence for the period October –

November 14, 2002, and, therefore, failed to satisfy the policy's

elimination period.  Unum invited plaintiff to submit further

information for its consideration.

    In response, plaintiff's counsel forwarded to Unum, <u>inter

alia</u>, a letter from Dr. McAlister dated October 31, 2002, stating

that plaintiff's spinal disorders "are permanent in nature" and

that she "remains unfit for work."  <u>Id.</u> at UACL00560.

Plaintiff's counsel also argued that plaintiff's travel

restrictions prevented her from getting to her job at Jostens and
again argued that plaintiff's job at Jostens was not sedentary:

> Further, I note that Dr. Seiters finds that clinical
> findings are consistent with restricting push[,]
> pull, lift and carry to the 5 to 10 lb. range.  As
> the UPS records and graph enclosed in our letter of
> July 7, 2003 indisputably indicate, Mrs. Nelson was
> required to regularly and daily lift boxes of
> photographs substantially heavier than 10 pounds.
> Unum Provident is again reminded that this is a
> random sampling representing only a few days out of
> the several years Mrs. Nelson worked for Jostens.  A
> methodical investigation would reveal even heavier
> cartons that had to be lifted and moved several times
> during the course of a work day.

Id. at UACL00566-69.

Thereafter, Dr. Seiters conducted a second medical review on
Unum's behalf on October 23, 2003, concluding that the new
clinical information was "consistent with continued R&Ls
[restrictions and limitations], . . . for repetitive , prolonged
or extreme cervical spine positioning, activity in the DOT
[Dictionary of Occupational Titles] sedentary range and a
requirement for frequent change of position."  Id. at UACL00572.
Dr. Seiters further concluded that the findings were "consistent
with orthopedic R&Ls the lumbar spine for repetitive bending and
twisting, some degree of lifting restriction likely in the DOT
light to medium-range and accommodation for frequent change of
position on a temporary basis related to a flare up of back pain
in September 2003 and continuing pending follow-up assessment."
Id.  Unum also referred the claim to G. Shannon O'Kelley, M.Ed.,

9

C.R.C., a vocational rehabilitation consultant, on October 28, 2003, with the following question:

> Would the claimant be able to perform her occupation as performed in the national economy with the restrictions and limitations presented per the medical review?  The medical review indicates that the claimant would have the ability to perform activities in the DOT sedentary range with no repetitive, prolonged or extreme cervical spine positioning, no repetitive bending/twisting, and a requirement for frequent change of position.

Id. at UACL00577.

O'Kelley described plaintiff's occupation as follows:

> The occupation as described by the employer would be considered to be sedentary as it does not require lifting greater than 10 pounds occasionally and predominantly performed in the seated position.  The occupation is an amalgamation of occupations per the DOT to include receptionist, customer service activities, order clerk, filing and shipping.  The combined physical requirements of these occupations from the DOT would be considered to be light.  The job analysis further defines the occupation into the nature of the materials filed and mailed.  These items weigh approximately 3 pounds and the amount of walking is considered brief.  The overall physical requirements of the occupation would then be considered to be sedentary.

Id. at UACL00577 (emphasis added).

O'Kelley concluded that plaintiff "would be able to perform the material and substantial duties of her regular occupation as it would be performed in the national economy."  Id.

The administrative record also includes a handwritten Management/Consultant Referral Form dated October 28, 2003 from S. Berryhill to M. Howard regarding plaintiff's claim, stating:

> Marilyn explained to me the VAWC [Vocational
> Assessment of Work Capacity] DOT job amalgamation
> does not include the material and substantial duties
> of each and every job mentioned in their entirety.
> She further explained the report goes on to specify
> the duties pulled for those jobs to form the
> composite would not be beyond the sedentary range.

Id. at UACL00581.

Also on October 28, 2003, Unum advised plaintiff's counsel
that the denial of benefits was upheld on the second appeal, once
again reiterating that "Unum will look at your occupation as it
is normally performed in the national economy, instead of how the
work tasks are performed for a specific employer or at a specific
location." Id. at UACL00585. The letter went on to state:

> We received your letter of reappeal, the job
> description, and the additional medical records you
> submitted within our office on September 22, 2003.
> We had this new clinical information reviewed by the
> Board Certified Orthopedic Surgeon. The findings of
> the Board Certified Orthopedic Surgeon are, in part,
>
> "...the new clinical information confirms continued
> symptoms and physical findings related to the
> cervical spine including tenderness, spasm, decreased
> range of motion and cervical spondylosis on imaging
> studies. These findings are consistent with
> continued R&Ls [restrictions and limitations], as
> noted in the previous orthopedic consultant review,
> for repetitive, prolonged or extreme cervical spine
> positioning, activity in the DOT [dictionary of
> occupational titles] sedentary range and a
> requirement for frequent change of position.
>
> The clinical findings related to the lumbar spine
> include abnormal imaging studies that documented
> lumbar spondylosis with significant facet joint
> arthritis and limited current clinical information.
> The available information indicates intermittent
> lumbar symptoms, variable tenderness, possible loss
> of lumbar motion, facet joint injections in May 2003

11

and a period of increased symptoms in September 2003. <u>These clinical findings are consistent with orthopedic R&Ls the lumbar spine [sic] for repetitive bending and twisting, some degree of lifting restriction likely in the DOT light to medium-range and accommodation for frequent change of position on a temporary basis</u> related to a flare up of back pain in September 2003 and continuing pending follow-up assessment . . . ."

We had a Vocational Rehabilitation Consultant conduct a Vocational Assessment of Work Capacity [VAWC] in order to ascertain if your client might be able to performing [sic] the material and substantial duties of her regular occupation when taking into consideration all the R&Ls found to be supported by our Medical Department. The VAWC concluded that "The claimant would be able to perform the material and substantial duties of her regular occupation as it would be performed in the national economy."

Taking the above factors into consideration, it does not appear that your client satisfies her policy's definition of disability. Therefore we are upholding our decision not to extend Long Term Disability benefits.

<u>Id.</u> at UACL00583-85 (emphasis added).

This litigation followed.


## Discussion

Plaintiff moves for summary judgment, arguing that Unum failed to give proper weight to the treating physicians' reports and failed to accurately assess the level of physical strain required by plaintiff's job at Jostens. Defendants move for "judgment on the administrative record" on the grounds that the standard of review to be applied to Unum's decision to deny benefits is "arbitrary and capricious" and that plaintiff can

12

prove no set of facts that would establish that the denial of
benefits was, in fact, arbitrary and capricious.  The Federal
Rules of Civil Procedure do not recognize "motions for judgment
on the administrative record," and defendants' motion will be
treated as a motion for summary judgment.[2]  See Muller v. First
Unum Life Ins. Co., 341 F.3d 119, 125-26 (2d Cir. 2003) ("The
question is how precisely to treat the District Court's
disposition of defendant's 'motion for judgment on the
administrative record' – a motion that does not appear to be
authorized in the Federal Rules of Civil Procedure.  Many courts
have either explicitly or implicitly treated such motions, which
are frequently made by insurers in ERISA benefits cases, as
motions for summary judgment under Rule 56."); see also Robbins
v. Laberge Eng'q & Consulting Ltd., No. 01-CV-1738, 2005 WL
2039195, at *6 (N.D.N.Y. Aug. 24, 2005) (collecting cases);

---

[2] Defendants cite a case – in contravention of the express
mandate of the Second Circuit against citing unpublished summary
orders – as an endorsement of motions styled as motions for
judgment on the administrative record.  In any event, the case
says no such thing, but merely adopts the district court's
treatment of the motion as one for summary judgment.  See Napoli
v. Unum Life Ins. Co., 78 Fed. Appx. 787, 789, 2003 WL 22454481
(2d Cir. 2003).  In any event, it is unnecessary for defendants
to style their motion as one for judgment on the administrative
record if their goal is to limit the evidence on summary judgment
to the administrative record.  The summary judgment record would
be so limited, regardless of how the motion is characterized,
unless the review were de novo and the plaintiff showed good
cause for introducing documents outside the administrative
record.  See Muller v. First Unum Life Ins., 341 F.3d 119, 125-26
(2d Cir. 2003).

13

<u>Hammer v. First Unum Life Ins. Co.</u>, No. 01-CV-9307, 2004 WL
1900334, at *3 (S.D.N.Y. Aug. 25, 2004).


**(1)**

**ERISA Standard of Review**

Judicial review of a decision to deny ERISA benefits must be
<u>de novo</u> "unless the benefit plan gives the administrator or
fiduciary discretionary authority to determine eligibility for
benefits or to construe the terms of the plan." <u>Firestone Tire &
Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Kinstler v. First
Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 249 (2d Cir.
1999). If the administrator does have such discretion under the
plan, a court may reverse the administrator's decision only if it
is arbitrary and capricious. <u>See</u> <u>Firestone Tire</u>, 489 U.S. at
115; <u>Zervos v. Verizon New York, Inc.</u>, 277 F.3d 635, 650 (2d Cir.
2002). A decision is arbitrary and capricious "only if it was
without reason, unsupported by substantial evidence or erroneous
as a matter of law." <u>Lekperic v. Bldg. Serv. 32B-J Health Fund</u>,
No. 02-CV-5726, 2004 WL 1638170, at *3 (E.D.N.Y. July 23, 2004)
(quoting <u>Pulvers v. First UNUM Life Ins. Co.</u>, 210 F.3d 89, 92 (2d
Cir. 2000)).

Plaintiff does not contest that Unum has discretion under
the plan to determine benefit eligibility. The plan language at
issue reads:

When making a benefit determination under the policy,
Unum has discretionary authority to determine your
eligibility for benefits and to interpret the terms
and provisions of the policy.

Def.'s 56.1 Stmt., Ex. 2 at UACL00607.

The plan is clear that Unum may exercise discretion in

determining benefit eligibility.  Accordingly, the arbitrary and

capricious standard applies.[3]


### (2)

### Decision to Deny Benefits

**a.   Plaintiff's physical limitations**

Plaintiff argues that Unum's decision to deny benefits was

irrational, because it acknowledged that, according to Dr.

Nagendra's October 2002 physical capacity evaluation form,

plaintiff could only "sit, stand and walk two hours a day

---

[3] Plaintiff has also argued that a <u>de novo</u> standard should
apply because Unum was operating under a conflict of interest.
She argues that Unum failed to follow its own rules and that it
was secretly in cahoots with Jostens to deny plaintiff disability
benefits.  The argument concerning collusion with Jostens is both
unsupported and misplaced.  Any bias on the part of Unum would
not change the standard of review, but would instead be
considered in analyzing whether plaintiff's claim was afforded a
full and fair review.  <u>See</u> <u>Firestone</u>, 489 U.S. at 115 (noting
that conflict of interest on the part of the fiduciary is one
factor to be weighed in determining whether a decision was
arbitrary and capricious); <u>Jordan v. Retirement Comm. of
Rensselaer Polytechnic Inst.</u>, 46 F.3d 1264, 1274 (2d Cir. 1995)
(stating that mere fact that the fiduciary works for the employer
that funds the plan does not alone create a conflict of
interest).  The argument of whether Unum failed to follow its own
rules will be addressed <u>infra</u>.

continuously" and yet concluded that she was capable of performing her regular occupation, which required her to "be able to sit for up to 8 hours a day with minor walking." Jan. 6, 2003 denial letter, Def's 56.1 Stmt., Ex. 2 at UACL00303. There is, however, no inherent contradiction in these two statements, because, according to Dr. Nagendra, plaintiff is only limited in how long she can sit <u>continuously</u>. Thus, as a matter of logic, she could sit for up to two hours, walk around, then sit for another two hours, walk around, etc., and it is not arbitrary and capricious to conclude that this pattern of activity is entirely consistent both with her physical limitations and her occupational requirements.

Plaintiff argues that, under Dr. Nagendra's restrictions, she could only sit for a single two-hour block in any one eight-hour day, after which it would be some time before she could again sit down, thus precluding her from even sedentary work. Aff. of Harriette N. Boxer in Supp. of Pl's Mot. for Summ. J., ¶ 44. The form filled out by Dr. Nagendra does not say so much, indicating only the length of time plaintiff could sit, and whether she could do so "continuously" or "alternating." It stands to reason that if Dr. Nagendra had indicated that plaintiff could sit for up to two hours per day "alternating," he would have meant that she could sit for a total of two hours in an eight-hour day, with breaks between sitting. It was not

arbitrary and capricious for Unum to conclude that by checking that she could sit for two hours "continuously," Dr. Nagendra was indicating that she could sit for two hours at a stretch, with the potential for multiple periods of sitting during the eight-hour day.

Plaintiff next argues that the job description and job analysis forms submitted by Jostens indicate that plaintiff could not frequently change position, because she was required to be on the phone 70% of the time.[4]  Being on the phone is not inconsistent with changing position, however.  It was not arbitrary and capricious for Unum to conclude that plaintiff, as a customer service representative, could have changed position frequently enough to accommodate her limitations.[5]

Plaintiff further argues that she is unable to perform the material and substantial duties of her occupation because she cannot drive and cannot ride a bus for more than an hour, whereas her bus commute to Jostens takes longer than an hour.  It is clear that a claimant's commute to a particular job site is not a consideration for determining disability.  See Adams v.

_____

[4] Defendant disputes that plaintiff was required to be on the phone 70% of the time.

[5] Plaintiff contends that Unum failed to give deference to plaintiff's treating physician(s), as required under the plan. It would appear from the record, however, that Unum did not discount the opinions of plaintiff's treating physicians, but rather relied on them in making its determination.

<u>Prudential Ins. Co. of Am.</u>, 280 F. Supp. 2d 731, 739 (N.D. Ohio 2003) (reversing decision to terminate long-term disability benefits on other grounds, but noting that "[t]he Court is unpersuaded by Adams' argument that his inability to travel to and from work is a material and substantial duty that Defendant must consider."); <u>Chandler v. Underwriters Labs., Inc.</u>, 850 F. Supp. 728, 738 (N.D. Ill. 1994) ("It is absurd to suggest that it is arbitrary and capricious for the Appeals Committee to have decided that the fortuity of where an employee lives (something within the employee's control, unlike a truly medical disability) is not relevant to a finding of disability under the plan – a concept that expressly focuses on medically disabling conditions.").

**b. Defining plaintiff's occupation**

Plaintiff also argues that her job at Jostens required her to lift packages weighing more than ten pounds on a regular basis – something which Dr. Nagendra had said she could not do – and that these lifting requirements preclude classifying her occupation as a customer service representative as sedentary.[6]

---

[6] Along these lines, plaintiff argues at length that Unum and Jostens conspired to have Troy Rudoll fill out a job analysis form that did not include spaces to show that she was frequently asked to lift very heavy boxes, so that they could falsely claim that her job was sedentary. To the contrary, the job analysis form that Mr. Rudoll filled out <u>does</u> ask about the lifting requirements. It includes a table on which the x-axis is labeled

The question, however, is not what plaintiff's specific duties were at Jostens, but what the duties of a customer service representative in the national economy are. Plaintiff places such emphasis on the lifting requirements at Jostens that she almost appears to argue that she was not a customer service representative at all, but was rather in shipping and receiving. In light of her argument that she was required to be on the phone 70% of the time, however, her job description is more consistent with being a customer service representative who had ancillary lifting duties that were unique to the specific office in which she worked.

The plan calls for Unum to "look at your occupation as it is normally performed in the <u>national economy</u>, instead of how the work tasks are performed for a specific employer or at a specific location." Def's 56.1 Stmt., Ex. 2 at UACL00587 (emphasis added). Unum consistently characterized plaintiff's occupation as sedentary, first in its initial denial of her claim, and then in its denial of her two appeals, despite acknowledging receipt of the UPS shipping records she submitted and her counsel's arguments that plaintiff was frequently asked to lift heavy packages at Jostens. Indeed, Unum's classification of

"Maximum lbs." and has columns marked <5 lbs., 10 lbs., 15 lbs., and up to >80 lbs., and the y-axis has rows marked "Frequently" and "Occasionally." Mr. Rudoll checked the boxes to indicate that plaintiff lifted 5 lbs. frequently and 10 lbs. occasionally. <u>See</u> Def's 56.1 Stmt., Ex. 2 at UACL00290.

plaintiff's occupation as "sedentary" is the key to its

determination that she was not entitled to long-term disability

benefits, because its own orthopedic surgeon agreed that

plaintiff was limited in pushing, pulling and carrying to 5-10

pounds.[7]

The administrative record includes the cryptic internal memo

from S. Berryhill to M. Howard, stating that "the duties pulled

for those jobs to form the composite would not be beyond the

sedentary range."  Despite the memo, in evaluating plaintiff's

second appeal, O'Kelley, Unum's vocational rehabilitation

consultant, looked to an amalgamation of different jobs under the

Dictionary of Occupational Titles, which together resulted in a

conclusion that plaintiff's occupation required "light" work.

The duties for the job titles O'Kelley used in the amalgamation

are:

> RECEPTIONIST: "Receives callers at establishment,
> determines nature of business, and directs callers to
> destination . . . .  May type memos, correspondence,
> reports and other documents . . . .  May perform
> variety of clerical duties and other duties pertinent
> to type of establishment.  May collect and distribute
> mail and messages . . . . Strength: S [sedentary]"

> CUSTOMER-COMPLAINT CLERK: "Investigates customer
> complaints about merchandise, service, billing, or

---

[7] The Dictionary of Occupational Titles defines "sedentary
work" as "[e]xerting up to 10 pounds of force occasionally,"
whereas it defines "light work" as "[e]xerting up to 20 pounds of
force occasionally."  "Occasionally" is defined as "activity or
condition exists up to 1/3 of the time."  See
http://www.oalj.dol.gov/public/dot/references/dotappc.htm.

credit rating: Examines records, such as bills,
computer printouts, microfilm, meter readings, bills
of lading and related documents and correspondence,
and converses or corresponds with customer and other
company personnel . . . . Strength: S"

ORDER CLERK: "Processes orders for material or
merchandise received by mail, telephone, or
personally from customer or company employee,
manually or using computer or calculating machine . .
. . Strength: S"

FILE CLERK: "Files records in alphabetical or
numerical order, or according to subject matter or
other system . . . . Places cards, forms, microfiche,
or other material in storage receptacle, such as file
cabinet, drawer, or box.  Locates and removes files
upon request. . . . May enter information on records
. . . . Strength: L [light]"

MAIL CLERK: "Sorts incoming mail for distribution and
dispatches outgoing mail: Opens envelopes by mail or
machine. . . . Strength: L"

Pl.'s Exs. Accompanying Summ. J. Mot., Ex. 40.

Thus, two of the five job titles had a strength level of

"light work."  Nonetheless, O'Kelley downgraded the physical

requirements of plaintiff's occupation from "light" to

"sedentary" based on the job analysis form filled out by Troy

Rudoll.  Plaintiff vociferously disputes the accuracy of that

form, contending that it severely underestimates the weights she

was required to carry on a regular basis.

The "random sampling" of shipping records and the chart

plaintiff submitted to demonstrate the physical demands of her

job show, at most, that over a seven-month period, Jostens

shipped 49 packages weighing more than 10 pounds – an average of

seven per month.  Plaintiff does not allege that she alone had to carry all of the packages weighing more than 10 pounds that were included in the "random sampling," but she does argue that she had to lift heavy packages "daily."  Plaintiff's allegations are simply not borne out by the "random sampling" evidence she has provided.

Throughout, plaintiff has aimed her arguments at her alleged inability to work at Jostens.  But the crucial question is whether she could work anywhere as a customer service representative.  Again and again, Unum reiterated its standard of evaluating an occupation as it is performed in the national economy, but it was not until its evaluation of plaintiff's second appeal that Unum elucidated its reasoning for categorizing plaintiff's occupation as sedentary.  When it did so, through its vocational rehabilitation consultant, Unum departed from its stated practice of defining an occupation as it is normally performed in the national economy.  The amalgamation of DOT job titles would have potentially led to her occupation being labeled "light" work, because two of the five DOT job titles were categorized as requiring light work.  Instead, O'Kelley downgraded plaintiff's occupation as a customer service representative to "sedentary" based solely on the job analysis submitted by Mr. Rudoll.  In other words, Unum was making the same mistake it was ascribing to plaintiff, namely, tying its

evaluation of plaintiff's occupation too closely to how she performed her job for her specific employer. Because the parties dispute the accuracy of the job analysis completed by Mr. Rudoll, however, they reached opposing conclusions regarding the strenuousness of plaintiff's job as it was performed at Jostens.

O'Kelley's implicit conclusion that the job analysis trumped the DOT job title amalgamation, in combination with the note from Mr. Berryhill that only jobs in the sedentary range should be considered for the job amalgamation, make Unum's analysis of plaintiff's occupation appear to have been result-oriented.[8] "[W]here a plan administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found

_____

[8] Plaintiff has not demonstrated that Unum was in fact influenced by a conflict of interest - a situation which would trigger de novo review. However, Unum's apparent self-interested bias should be a factor in analyzing whether there has been an abuse of discretion. See Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000) (holding Unum's dual role as plan administrator and plan insurer is a factor to be weighed in determining whether there has been an abuse of discretion, but finding no bias sufficient for de novo review where an internal Unum memorandum noted that the plaintiff's employer law firm specializes in disability claims). In the Second Circuit, "[i]n order to trigger de novo review of an administrator's decision when the plan grants discretion to the administrator, a plaintiff must show that 'the administrator was in fact influenced by the conflict of interest.'" Id. (quoting Sullivan v. L.T.V. Aerospace and Defense Co., 82 F.3d 1251, 1256 (2d Cir. 1996)). This rule is in contrast to the more finely delineated multi-step approach adopted by the Eleventh Circuit in analyzing ERISA-plan benefit denials where the plan administrator has discretion, but operates under a conflict of interest. See Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1137-38 (11th Cir. 2004).

to be arbitrary and capricious." <u>Pulvers</u>, 210 F.3d at 93 (internal quotation marks and citations omitted). Because Unum categorized plaintiff's occupation in contravention of the plan's plain language, plaintiff was denied the full and fair review of the denial of her claim for benefits that is guaranteed under 29 U.S.C. § 1133, and the denial of benefits was arbitrary and capricious.

On the other hand, the evidence is not so overwhelmingly one-sided that a reasonable person could only conclude that plaintiff's occupation was not sedentary. The proper remedy in this situation is not for the court to substitute its judgment for that of Unum, but to remand the case back to Unum with the instruction that it reconsider plaintiff's application and comply with the plan language and the requirements of 29 U.S.C. § 1133 in issuing a new decision. <u>See</u> <u>Quinn v. Blue Cross and Blue Shield Ass'n</u>, 161 F.3d 472, 477 (7th Cir. 1998); <u>Cejaj v. Bldg. Serv. 32B-J Health Fund</u>, 2004 WL 414834, at *10 (S.D.N.Y. Mar. 5, 2004).


**c.   Plaintiff's social security award**

Plaintiff further argues that Unum's denial of benefits was arbitrary and capricious because it differs from the award of disability benefits by the Social Security Administration ("SSA"), which employs a similar standard for determining

24

disability.  The administrative record does not include the reasoning behind the SSA's award, but instead contains only the letter notifying plaintiff of her award.  In any event, "a plan administrator is not bound by the determination of the Social Security Administration."  <u>Gaitan v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Indus.</u>, No. 99-CV-3534, 2000 WL 290307, at *5 (S.D.N.Y. Mar. 20, 2000) (citing <u>Kunstenaar v. Conn. Gen. Life Ins. Co.</u>, 902 F.2d 181, 184 (2d Cir. 1990)); <u>see also</u> <u>Perezaj v. Bldg. Serv. 32B-J Pension Fund</u>, No. 04-CV-3768, 2005 WL 1993392, at *6 (E.D.N.Y. Aug. 17, 2005).  As long as the plan's finding is "reasonable and supported by substantial evidence," it is not arbitrary and capricious simply because it differs from that of the SSA. <u>Gaitan</u>, 2000 WL 290307, at *5.

### d.  "National economy"

Plaintiff next argues that there is an ambiguity in the plan language regarding the term "national economy," because the Social Security Administration ("SSA"), which also uses the term "national economy" in its definition of disability, awarded benefits, where Unum did not.  Plaintiff has presented no evidence that the term "national economy" had anything to do with either Unum's or the SSA's determinations, however.  As discussed <u>supra</u>, eligibility for benefits under the plan turns on whether a

claimant is capable of performing the material and substantial duties of her "regular occupation," which is defined as "[t]he occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the <u>national economy</u>, instead of how the work tasks are performed for a specific employer or at a specific location." Def's 56.1 Stmt., Ex. 2 at UACL00587 (emphasis added). The SSA, which awarded plaintiff disability benefits, also employs the term "national economy" in its definition of disability, as follows:

> The law defines disability as the inability to do any substantial gainful activity.... To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the <u>national economy</u>.

20 C.F.R. § 404.1505 (emphasis added).

It is evident that the two terms are being used in two different contexts. Unum's use focuses on defining the claimant's occupation, while the SSA's use focuses on any work that is in general existence. Thus, the fact that both the SSA and Unum use the term "national economy" in their definitions of disability and that they reached different conclusions regarding plaintiff's eligibility for benefits does not mean that the term "national economy" is ambiguous or even that the differing determinations turned on their interpretations of that phrase. In any event, the plain language of the plan gives Unum

discretion to construe the plan terms, and the rule of <u>contra
proferentum</u> – "that when one party is responsible for the
drafting of an instrument, absent evidence indicating the
intention of the parties, any ambiguity will be resolved against
the drafter" – is, therefore, inapplicable. <u>Pagan v. NYNEX
Pension Plan</u>, 52 F.3d 438, 443-44 (2d Cir. 1995) (quoting <u>O'Neil
v. Ret. Plan for Salaried Employees of RKO Gen., Inc.</u>, 37 F.3d
55, 61 (2d Cir. 1994)); <u>see also</u> <u>Robbins</u>, 2005 WL 2039195, at *8
("[I]t is well settled in this Circuit that the rule of <u>contra
proferentum</u> does not apply upon review under the arbitrary and
capricious standard.").

The cases plaintiff cites to the contrary – <u>Critchlow v.
First UNUM Life Insurance Company of America</u>, 378 F.3d 246 (2d
Cir. 2004) and <u>Fay v. Oxford Health Plan</u>, 287 F.3d 96, 104 (2d
Cir. 2002) – are actually inapposite. <u>Critchlow</u> involved a plan
that did not give discretion to the administrator, and was thus
decided on a <u>de novo</u> review of the denial of benefits, a fact
that was discussed by the district court and accepted without
comment on appeal. <u>See</u> <u>Critchlow v. First UNUM Life Ins. Co. of
Am.</u>, 198 F. Supp. 2d 318, 321 (W.D.N.Y. 2002). At issue in <u>Fay</u>
was the very language which determined whether the administrator
had discretion in awarding benefits. <u>Fay</u>, 287 F.3d at 104
("Although express use of the terms "deference" and "discretion"
in the plan is not necessary to avoid a de novo standard of

review, this Court will construe ambiguities in the plan's language against the insurer.").

In sum, plaintiff has presented no evidence that there is any ambiguity in the term "national economy," but even if there were, the plan gives Unum the power to construe its terms. Even though Unum's categorization of plaintiff's occupation as it is performed in the national economy was arbitrary and capricious, there is no evidence that its construction of the phrase "national economy" played any role in its determination.

**e. Consideration of materials outside the administrative record**

Plaintiff argues that materials outside the administrative record should be considered, based on Unum's alleged conflict of interest in evaluating plaintiff's claim. Even where a plan administrator does not have discretion and a court reviews the plan's decision de novo, a court's review is restricted to the administrative record absent "good cause" to admit further evidence. See, e.g., Muller, 341 F.3d at 125-26 ("When viewed in light of our standard that additional evidence should not be admitted without 'good cause' to expand the administrative record, the District Court's decision to exclude Muller's additional evidence was proper.") (internal citation omitted). Thus, in determining whether Unum's denial of benefits was arbitrary and capricious, it is proper to consider nothing more

and nothing less than the administrative record.

One of the documents plaintiff seeks to introduce would have bolstered Unum's case that it acted reasonably in relying on the job analysis, had it been part of the administrative record. It is the Unum Claims Manual: Guidelines for Evaluating an Occupation, and it provides, <u>inter alia</u>:

> The following sources can be used to establish the insured's occupation:
> . . . .
> • job description
> . . . .
> • vocational resources such as Dictionary of Occupational Titles, Occupational Outlook Handbook, etc.

Pl's Exhs. Accompanying Summ. J. Mot., Ex. 44. The Claims Manual plainly states that it is appropriate to rely on both the job description and the DOT in establishing an insured's occupation. While it is understandable that a job analysis might form a starting point for determining how a claimant's occupation is performed in the national economy, relying more heavily on a job analysis than on a job amalgamation per the DOT is at odds with the plan language, which clearly states that a claimant's occupation is not defined by what she does for a specific employer at a specific location. Although review of the denial of benefits is limited to the administrative record, consideration of the Unum Claims Manual is permissible, because it was also available to Unum when it was evaluating plaintiff's claim.

The other materials outside the administrative record that plaintiff seeks to introduce – shipping records from December 2001 and September 2002 that allegedly show that plaintiff was regularly required to lift heavy objects for her job at Jostens – do show daily shipments weighing more than ten pounds, but, like the shipping records already considered by Unum, they do not show that plaintiff alone had to lift all (or any of) those packages. Furthermore, as stated in the policy, the pivotal question is whether a claimant can perform her "occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." Def's 56.1 Stmt., Ex. 2 at UACL00587 (emphasis added).

In her brief, plaintiff hypothesizes that Unum would have had reason to discredit plaintiff's claims with regard to the lifting requirements of her occupation if she worked in a company that had its own shipping department. Pl.'s Mem. at 9. This example betrays the fatal flaw in plaintiff's argument: she concedes that the work requirements at Jostens are not typical of customer service clerk positions in the national economy. Thus, whether Jostens required its customer service representatives to lift heavy objects is not determinative of whether customer service representatives in the national economy are expected to lift heavy objects. On remand, however, plaintiff can re-argue the accuracy of the job analysis form.

Finally, plaintiff seeks to introduce her own affidavit in support of her motion. In it, she details her commute to work and the physical requirements of her job at Jostens. As this affidavit was not part of the administrative record, it would be improper to consider it now, although plaintiff would not be precluded from submitting the information on remand.

**f. Preemption of plaintiff's state and common law causes of action**

Defendant also moves to dismiss plaintiff's state and common law causes of action as preempted under ERISA. Plaintiff has brought nine causes of action, giving them the following titles:

1. Against Unum - ERISA - Arbitrary and Capricious
2. Against Unum - ERISA - Denial of Long Term Benefits Based upon Improper Decision to Arbitrarily Cut Off Plaintiff's Short Term Disability Benefits
3. Against Unum - ERISA - Negligence
4. Against Unum - ERISA - Ambiguity
5. Against Unum - ERISA - Breach of Fiduciary Duty under ERISA (29 USC 1104) and Conspiracy
6. Against Jostens - Breach of Fiduciary Duty to Plaintiff
7. Against Jostens - Tortious Interference with Contract and Conspiracy
8. Against Jostens - Fraud and Conspiracy
9. Against Jostens - Negligence

Am. Compl. and Jury Demand, ¶¶ 26-120.

In her opposition brief, plaintiff concedes that ERISA preempts common law causes of action, but argues that her third cause of action, for negligence, simply seeks relief available under ERISA and should, therefore, not be dismissed. Plaintiff

makes a similar argument concerning her fifth cause of action,
for breach of fiduciary duty.  Plaintiff's sixth through ninth
causes of action, for negligence, breach of fiduciary duty,
tortious interference with contract and conspiracy, derive from
her contention that Jostens should not have had Mr. Rudoll fill
out the job analysis form, because he was insufficiently familiar
with her work duties.  Plaintiff argues that these causes of
action are necessary so that she can obtain discovery –
particularly, depositions of Unum employees – to which she would
not otherwise be entitled, but cites no case law that would save
them from dismissal.

ERISA preempts state law claims that "relate to" employee
benefit plans.  29 U.S.C. § 1144(a).[9]  Courts have construed this
preemption broadly to reach state law causes of action based on
improper processing of claims.  <u>See</u> <u>Aetna Health Inc. v. Davila</u>,
542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that
duplicates, supplements, or supplants the ERISA civil enforcement
remedy conflicts with the clear congressional intent to make the
ERISA remedy exclusive and is therefore pre-empted."); <u>Pilot Life</u>
<u>Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 48 (1987) ("The common law

---

[9] The statute provides:
> Except as provided in subsection (b) of this section,
> the provisions of this subchapter and subchapter III of
> this chapter shall supersede any and all State laws
> insofar as they may now or hereafter relate to any
> employee benefit plan....

29 U.S.C. § 1144(a).

causes of action raised in Dedeaux's complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a).").

"In determining whether ERISA preempts a state-law cause of action, 'the queries are (a) whether the contract claim asserted is related to an employee benefit plan, and, if so, (b) whether there is an exception under ERISA that precludes pre-emption of the state law [claim].'" Engler v. Cendant Corp., 380 F.Supp.2d 136, 140 (E.D.N.Y. 2005) (quoting Devlin v. Transportation Communs. Int'l Union, 173 F.3d 94, 101 (2d Cir. 1999)).  All of plaintiff's claims relate to denial of her benefits under an ERISA plan, and none fall under an exception.  Plaintiff's federal claims are subsumed by ERISA, and her state law claims are preempted by ERISA and dismissed.


**g.  Plaintiff's jury demand**

Plaintiff's demand for a jury is denied as moot.  Even if it were not moot, there is no right to a jury trial under ERISA. See Muller, 341 F.3d at 124; Sullivan, 82 F.3d at 1258 ("[T]here is no right to a jury trial in a suit brought to recover ERISA benefits.").

**Conclusion**

For the reasons stated, defendants' motion for summary judgment is granted in part and denied in part and plaintiff's cross-motion for summary judgment is granted in part and denied in part. The case is remanded to Unum for reconsideration of whether plaintiff's occupation as it is performed in the national economy is sedentary, light or some other category of work, in accordance with the plan and this opinion. The Clerk of the Court is directed to close the case.

Dated: Brooklyn, New York
      March 27, 2006

                                        SO ORDERED:

                                        _____/s/_____
                                        David G. Trager
                                        United States District Judge